RACHELE R. BYRD (190634)
*byrd@whafh.com*
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: 619-239-4599
Facsimile: 619-234-4599

*Attorneys for Plaintiff William Mahaffey*
*and the Proposed Class*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILLIAM MAHAFFEY, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KEENAN & ASSOCIATES,<br><br>Defendant. | Case No. _____<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

William Mahaffey ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this action against Keenan & Associates ("Keenan" or "Defendant"). Plaintiff brings this action by and through his attorneys, and allege, based upon personal knowledge as to his own actions, and based upon information and belief and reasonable investigation by his counsel as to all other matters, as follows.

## I.    <u>INTRODUCTION</u>

1.    Keenan is a privately held insurance consulting and brokerage firm located in Torrance, California, and serves clients across California and the United States generally, by providing and administering employee benefits for Kennan's clients. Keenan employs more than 750 people and has nine locations across California.[1]

2.    As part of its operations, Keenan collects, maintains, and stores highly sensitive personal and medical information belonging to its clients' current and former benefit plan members, including, but not limited to their full names, Social Security numbers, dates of birth, drivers' license numbers, passport numbers, (collectively, "personally identifying information" or "PII"), information regarding medical treatment, diagnosis, and prescriptions, medical record numbers, health insurance information, and other protected health information (collectively, "private health information" or "PHI", and with PII, "Private Information").

3.    From August 21 to August 27, 2023, Keenan experienced a data security incident in which unauthorized cybercriminals accessed its information systems and databases and stole Private Information belonging to and Class members (the "Data Breach"). Keenan discovered this unauthorized access on August 27, 2023.   Subsequent investigation by Keenan determined that the unauthorized actors were able to access and exfiltrate Private Information concerning Plaintiff and Class members.

---

[1] *See* https://www.keenan.com/About/History (last accessed Feb. 6, 2024).

4.    On January 26, 2024, Keenan sent a notice to individuals whose information was accessed in the Data Breach.

5.    Because Keenan stored and handled Plaintiff's and Class members' highly-sensitive Private Information, it had a duty and obligation to safeguard this information and prevent unauthorized third parties from accessing this data.

6.    Ultimately, Keenan failed to fulfill this obligation, as unauthorized cybercriminals breached Keenan's information systems and databases and stole vast quantities of Private Information belonging to Keenan's clients' current and former benefit plan members, including Plaintiff and Class members. This breach—and the successful exfiltration of Private Information—were the direct, proximate, and foreseeable results of multiple failings on the part of Keenan.

7.    The Data Breach occurred because Keenan failed to implement reasonable security protections to safeguard its information systems and databases. Moreover, before the Data Breach occurred, Keenan failed to inform the public that its data security practices were deficient and inadequate. Had Plaintiff and Class members been made aware of this fact, they would have never provided such information to Keenan.

8.    Keenan's subsequent handling of the breach was also deficient.

9.    Keenan's meager attempt to ameliorate the effects of this data breach with two years of complimentary credit monitoring is woefully inadequate. Much of the Private Information that was stolen is immutable and two years of credit monitoring is nothing in the face of a life-long heightened risk of identity theft.

10.    As a result of Keenan's negligent, reckless, intentional, and/or unconscionable failure to adequately satisfy its contractual, statutory, and common-law obligations, Plaintiff and Class members suffered injuries, but not limited to:

- Lost or diminished value of their Private Information;

- Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

- Lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges;

- Time needed to investigate, correct and resolve unauthorized access to their accounts; time needed to deal with spam messages and e-mails received subsequent to the Data Breach;

- Charges and fees associated with fraudulent charges on their accounts; and

- The continued and increased risk of compromise to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their Private Information.

11.    Accordingly, Plaintiff brings this action on behalf of all those similarly situated to seek relief for the consequences of Defendant's failure to reasonably safeguard Plaintiff's and Class members' Private Information; its failure to reasonably provide timely notification to Plaintiff and Class members that their Private Information had been compromised; and for Defendant's failure to inform Plaintiff and Class members concerning the status, safety, location, access, and protection of their Private Information.

## II.    **PARTIES**

**Plaintiff William Mahaffey**

12.    Plaintiff William Mahaffey is a resident and citizen of Cerritos, California. Plaintiff Mahaffey is employed by the ABC Unified School District,

which provides health insurance to Plaintiff Mahaffey through Keenan. Plaintiff Mahaffey received Defendant's Data Breach Notice.

**Defendant Keenan**

13. Keenan is a California stock corporation with its principal place of business located at 23355 Crenshaw Blvd, Suite 200, Torrance, California 9501. Defendant conducts business in this District and throughout California.

### III.    JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, the number of class members exceeds 100, and at least one Class member is a citizen of a state different from Defendant. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

15. This Court has personal jurisdiction over Defendant because Defendant is headquartered in California.

16. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's and Class members' claims occurred in this District and because Defendant resides in this District.

### IV.    FACTUAL ALLEGATIONS

**A.    Keenan – Background**

17. Keenan is a privately held insurance consulting and brokerage firm that serves clients across a variety of industries, including healthcare and the public sector. As part of its normal operations, Keenan collects, maintains, and stores large volumes of Private Information belonging to its clients' current and former benefit plan members.

18.     Keenan failed to implement necessary data security safeguards at the time of the Data Breach. This failure resulted in cybercriminals accessing the Private Information of Keenan's clients' current and former benefit plan members—Plaintiff and Class members.

19.     Current and former benefit plan members of Keenan's clients, such as Plaintiff and Class members, made their Private Information available to Keenan with the reasonable expectation that any entity with access to this information would keep that sensitive and personal information confidential and secure from illegal and unauthorized access. They similarly expected that, in the event of any unauthorized access, these entities would provide them with prompt and accurate notice.

20.     This expectation was objectively reasonable and based on an obligation imposed on Keenan by statute, regulations, industrial custom, and standards of general due care.

21.     Unfortunately for Plaintiff and Class members, Keenan failed to carry out its duty to safeguard sensitive Private Information and provide adequate data security. As a result, it failed to protect Plaintiff and Class members from having their Private Information accessed and stolen during the Data Breach.

**B.     <u>The Data Breach</u>**

22.     According to Defendant's public statements, cybercriminals breached Keenan's information systems at various points from August 21 to 27, 2023. On August 27, 2023, Keenan discovered the Data Breach and began an investigation led by third-party cybersecurity and forensic experts. The forensic investigation confirmed that there had been unauthorized access to Keenan's internal systems where certain files—containing personal data provided by Keenan's clients - were exfiltrated from its systems. The type of information stolen included names, dates of birth, Social Security numbers, passport numbers, driver's license numbers, health insurance information, and general health information.

23.    On January 26, 2024, Keenan sent notice of the Data Breach to all individuals affected by this data security incident.

24.    Keenan estimates that the Private Information belonging to at least 1,509,616 individuals was compromised in this incident.

**C.    Keenan's Many Failures Both Prior to and Following the Breach**

25.    Defendant collects and maintains vast quantities of Private Information belonging to Plaintiff and Class members as part of its normal operations. The Data Breach occurred as direct, proximate, and foreseeable results of multiple failings on the part of Defendant.

26.    First, Defendant inexcusably failed to implement reasonable security protections to safeguard its information systems and databases.

27.    Second, Defendant failed to inform the public that its data security practices were deficient and inadequate. Had Plaintiff and Class members been aware that Defendant did not have adequate safeguards in place to protect such sensitive Private Information, they would have never provided such information to Defendant.

28.    In addition to the failures that lead to the successful breach, Defendant's failings in handling the breach and responding to the incident exacerbated the resulting harm to the Plaintiff and Class members.

29.    Defendant's delay in informing victims of the Data Breach that their Private Information was compromised virtually ensured that the cybercriminals who stole this Private Information could monetize, misuse and/or disseminate that Private Information before the Plaintiff and Class members could take affirmative steps to protect their sensitive information. As a result, Plaintiff and Class members will suffer indefinitely from the substantial and concrete risk that their identities will be (or already have been) stolen and misappropriated.

30.    Additionally, Defendant's attempt to ameliorate the effects of this data breach with limited complimentary credit monitoring is woefully inadequate.

Plaintiff's and Class members' Private Information was accessed and acquired by cybercriminals for the express purpose of misusing the data. As a consequence, they face the real, immediate, and likely danger of identity theft and misuse of their Private Information. And this can, and in some circumstances already has, caused irreparable harm to their personal, financial, reputational, and future well-being. This harm is even more acute because much of the stolen Private Information, such as healthcare data, is immutable.

31.    In short, Defendant's myriad failures, including the failure to timely notify Plaintiff and Class members that their personal and medical information had been stolen due to Defendant's security failures, allowed unauthorized individuals to access, misappropriate, and misuse Plaintiff's and Class members' Private Information for more than five months before Defendant finally granted victims the opportunity to take proactive steps to defend themselves and mitigate the near- and long-term consequences of the Data Breach.

**D.    <u>Data Breaches Pose Significant Threats</u>**

32.    Data breaches have become a constant threat that, without adequate safeguards, can expose personal data to malicious actors. It is well known that PII, and Social Security numbers in particular, is an invaluable commodity and a frequent target of hackers.

33.    In 2022, the Identity Theft Resource Center's Annual End-of-Year Data Breach Report listed 1,802 total compromises involving 422,143,312 victims for 2022, which was just 50 compromises short of the current record set in 2021.[2] The HIPAA Journal's 2022 Healthcare Data Breach Report reported 707 compromises involving healthcare data, which is just 8 shy of the record of 715 set in 2021 and

---

[2] *2022 End of Year Data Breach Report*, Identity Theft Resource Center (January 25, 2023), available at:
https://www.idtheftcenter.org/publication/2022-data-breach-report/?utm_source=press+release&utm_medium=web&utm_campaign=2022+Data+Breach+Report.

still double that of the number of similar such compromises in 2017 and triple the number of compromises in 2012.[3]

34.   Statista, a German entity that collects and markets data relating to, among other things, data breach incidents and the consequences thereof, confirms that the number of data breaches has been steadily increasing since it began a survey of data compromises in 2005 with 157 compromises reported that year, to a peak of 1,862 in 2021, to 2022's total of 1,802.[4] The number of impacted individuals has also risen precipitously from approximately 318 million in 2015 to 422 million in 2022, which is an increase of nearly 50%.[5]



[3] *2022 Healthcare Data Breach Report*, The HIPAA Journal (January 24, 2023), available at: https://www.hipaajournal.com/2022-healthcare-data-breach-report/.

[4] *Annual Number of Data Breaches and Exposed Records in the United States from 2005 to 2022*, Statista, available at: https://www.statista.com/statistics/273550/data-breaches-recorded-in-the-united-states-by-number-of-breaches-and-records-exposed/.

[5] *Id.*

35.     This stolen PII is then routinely traded on dark web black markets as a simple commodity, with social security numbers being so ubiquitous to be sold at as little as $2.99 apiece and passports retailing for as little as $15 apiece.[6]

36.     In addition, the severity of the consequences of a compromised social security number belies the ubiquity of stolen numbers on the dark web. Criminals and other unsavory groups can fraudulently take out loans under the victims' name, open new lines of credit, and cause other serious financial difficulties for victims:

> [a] dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[7]

This is exacerbated by the fact that the problems arising from a compromised social security number are exceedingly difficult to resolve. A victim is forbidden from proactively changing his or her number unless and until it is actually misused and harm has already occurred. And even this delayed remedial action is unlikely to undo the damage already done to the victims:

> Keep in mind that a new number probably won't solve all your problems. This is because other governmental agencies (such as the IRS

---

[6] *What is your identity worth on the dark web?* Cybernews (September 28, 2021), available at: https://cybernews.com/security/whats-your-identity-worth-on-dark-web/.

[7] United States Social Security Administration, *Identity Theft and Your Social Security Number*, United States Social Security Administration (July 2021), available at: https://www.ssa.gov/pubs/EN-05-10064.pdf.

and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number won't guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.[8]

37.     The most sought after and expensive information on the dark web are stolen medical records which command prices from $250 to $1,000 each.[9] Medical records are considered the most valuable because unlike credit cards, which can easily be canceled, and social security numbers, which can be changed, medical records contain "a treasure trove of unalterable data points, such as a patient's medical and behavioral health history and demographics, as well as their health insurance and contact information".[10] With this bounty of ill-gotten information, cybercriminals can steal victims' public and insurance benefits and bill medical charges to victims' accounts.[11] Cybercriminals can also change the victims' medical records, which can lead to misdiagnosis or mistreatment when the victims seek medical treatment.[12] Victims of medical identity theft could even face prosecution

---

[8] *Id.*

[9] Paul Nadrag, Capsule Technologies*, Industry Voices—Forget credit card numbers. Medical records are the hottest items on the dark web*, Fierce Healthcare (January 26, 2021), available at: https://www.fiercehealthcare.com/hospitals/industry-voices-forget-credit-card-numbers-medical-records-are-hottest-items-dark-web.

[10] *Id.*

[11] *Medical Identity Theft in the New Age of Virtual Healthcare*, IDX (March 15, 2021), available at https://www.idx.us/knowledge-center/medical-identity-theft-in-the-new-age-of-virtual-healthcare. *See also* Michelle Andrews, *The Rise of Medical Identity Theft*, Consumer Reports (August 25, 2016), available at https://www.consumerreports.org/health/medical-identity-theft-a1699327549/.

[12] *Id.*

for drug offenses when cybercriminals use their stolen information to purchase prescriptions for sale in the drug trade.[13]

38.     The wrongful use of compromised medical information is known as medical identity theft and the damage resulting from medical identity theft is routinely far more serious than the harm resulting from the theft of simple PII. Victims of medical identity theft spend an average of $13,500 to resolve problems arising from medical identity theft and there are currently no laws limiting a consumer's liability for fraudulent medical debt (in contrast, a consumer's liability for fraudulent credit card charges is capped at $50).[14] It is also "considerably harder" to reverse the damage from the aforementioned consequences of medical identity theft.[15]

39.     Instances of Medical identity theft have grown exponentially over the years from approximately 6,800 cases in 2017 to just shy of 43,000 in 2021, which represents a seven-fold increase in the crime.[16]

40.     In light of the dozens of high-profile health, medical and insurance information data breaches that have been reported in recent years, entities, like Defendant, charged with maintaining and securing PII and PHI should know the importance of protecting that information from unauthorized disclosure. Indeed, Defendant knew, or certainly should have known, of the recent and high-profile data breaches: UnityPoint Health, Lifetime Healthcare, Inc., Community Health Systems, Kalispell Regional Healthcare, Anthem, Premera Blue Cross, and many others.[17]

---

[13] *Id.*

[14]     Medical Identity Theft, AARP (March 25, 2022), available at: https://www.aarp.org/money/scams-fraud/info-2019/medical-identity-theft.html.

[15] *Id.*

[16] *Id.*

[17] *See, e.g., Healthcare Data Breach Statistics*, HIPAA Journal, available at: https://www.hipaajournal.com/healthcare-data-breach-statistics.

41.    In addition, the Federal Trade Commission ("FTC") has brought dozens of cases against companies that have engaged in unfair or deceptive practices involving inadequate protection of consumers' personal data, including recent cases concerning health-related information against LabMD, Inc., SkyMed International, Inc., and others. The FTC publicized these enforcement actions to place companies like Defendant on notice of their obligation to safeguard Private Information.[18]

42.    Given the nature of Defendant's Data Breach, as well as the length of the time Defendant's networks were breached and the long delay in notification to victims thereof, it is foreseeable that the compromised Private Information has been or will be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the cybercriminals who possess Plaintiff's and Class members' Private Information can easily obtain Plaintiff's and Class members' tax returns or open fraudulent credit card accounts in Class members' names.

43.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because credit card victims can cancel or close credit and debit card accounts.[19] The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

44.    To date, Defendant has offered its consumers only limited identity theft monitoring services. The services offered are inadequate to protect Plaintiff and

[18] *See, e.g.*, *In the Matter of SKYMED INTERNATIONAL, INC.*, C-4732, 1923140 (F.T.C. Jan. 26, 2021).

[19] *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds*, Forbes (Mar 25, 2020), available at https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1. *See also Why Your Social Security Number Isn't as Valuable as Your Login Credentials*, Identity Theft Resource Center (June 18, 2021), available at https://www.idtheftcenter.org/post/why-your-social-security-number-isnt-as-valuable-as-your-login-credentials/.

Class members from the threats they will face for years to come, particularly in light of the Private Information at issue here.

45.     Despite the prevalence of public announcements of data breach and data security compromises, its own acknowledgment of the risks posed by data breaches, and its own acknowledgment of its duties to keep Private Information private and secure, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class members from misappropriation. As a result, the injuries to Plaintiff and Class members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for its clients' current and former benefit plan members.

**E.    Keenan Had a Duty and Obligation to Protect Private Information**

46.     Defendant has an obligation to protect the Private Information belonging to Plaintiff and Class members. First, this obligation was mandated by government regulations and state laws, including HIPAA and FTC rules and regulations. Second, this obligation arose from industry standards regarding the handling of sensitive PII and medical records. Plaintiff and Class members provided, and Defendant obtained, their information on the understanding that it would be protected and safeguarded from unauthorized access or disclosure.

**1.    HIPAA Requirements and Violation**

47.     HIPAA requires, *inter alia*, that Covered Entities and Business Associates implement and maintain policies, procedures, systems and safeguards that ensure the confidentiality and integrity of consumer and patient PII and PHI, protect against any reasonably anticipated threats or hazards to the security or integrity of consumer and patient PII and PHI, regularly review access to data bases containing protected information, and implement procedures and systems to detect, contain, and correct any unauthorized access to protected information. *See* 45 CFR § 164.302, *et seq.*

48.    HIPAA, as applied through federal regulations, also requires private information to be stored in a manner that renders it, "unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology. . . ." 45 CFR § 164.402.

49.    The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, requires entities to provide notice of a data breach to each affected individual "without unreasonable delay and *in no case later than 60 days following discovery of the breach*" (emphasis added).

50.    Defendant failed to implement and/or maintain procedures, systems, and safeguards to protect the Private Information belonging to Plaintiff and Class members from unauthorized access and disclosure.

51.    Upon information and belief, Defendant's security failures include, but are not limited to:

a.    Failing to maintain an adequate data security system to prevent data loss;

b.    Failing to mitigate the risks of a data breach and loss of data;

c.    Failing to ensure the confidentiality and integrity of electronic protected health information Defendant creates, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

d.    Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

e.    Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

f.   Failing to identify and respond to suspected or known security incidents;

g.   Failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii);

h.   Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR 164.306(a)(2);

i.   Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3);

j.   Failing to ensure compliance with HIPAA security standard rules by Defendant's workforce, in violation of 45 CFR 164.306(a)(94); and

k.   Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502, *et seq.*

52.   Upon information and belief, Defendant also failed to store the information it collected in a manner that rendered it, "unusable, unreadable, or indecipherable to unauthorized persons," in violation of 45 CFR § 164.402.

53.   Defendant also violated the HIPAA Breach Notification Rule since it did not inform Plaintiff and Class members about the breach until more than five months after it first discovered the breach.

**2.   FTC Act Requirements and Violations**

54.   The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices.

16

According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

55.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[20] The guidelines note businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.[21] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[22] Defendant clearly failed to do any of the foregoing, as evidenced by the length of the Data Breach, the fact that the Breach went undetected, and the amount of data exfiltrated.

56.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for

---

[20] *Protecting Personal Information: A Guide for Business*, Federal Trade Comm'n (October 2016), available at https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business (last accessed August 15, 2023).
[21] *Id.*
[22] *Id.*

security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

57.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

58.    Additionally, the FTC Health Breach Notification Rule obligates companies that suffered a data breach to provide notice to every individual affected by the data breach, as well as notifying the media and the FTC. *See* 16 CFR 318.1, *et seq.*

59.    As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

60.    Defendant was fully aware of its obligation to protect the Private Information of its clients' current and former benefit plan members, including Plaintiff and Class members. Defendant is a sophisticated and technologically savvy business that relies extensively on technology systems and networks to maintain its practice, including storing its clients' current and former benefit plan members' PII, protected health information, and medical information in order to operate its business.

61.    Defendant had and continues to have a duty to exercise reasonable care in collecting, storing, and protecting the Private Information from the foreseeable risk of a data breach. The duty arises out of the special relationship that exists between Defendant and Plaintiff and Class members. Defendant alone had the

exclusive ability to implement adequate security measures to its cyber security network to secure and protect Plaintiff's and Class members' Private Information.

### 3.    Industry Standards and Noncompliance

62.    As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information that they collect and maintain.

63.    Some industry best practices that should be implemented by businesses dealing with sensitive Private Information, like Defendant, include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendant failed to follow some or all of these industry best practices.

64.    Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendant failed to follow these cybersecurity best practices.

65.    Defendant should have also followed the minimum standards of any one of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

66.    Defendant failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

**F.**     **Plaintiff and the Class Suffered Harm Resulting from the Data Breach**

67.     Like any data hack, the Data Breach presents major problems for all affected.[23]

68.     The FTC warns the public to pay particular attention to how they keep personally identifying information including Social Security numbers and other sensitive data. As the FTC notes, "once identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[24]

69.     The ramifications of Defendant's failure to properly secure Plaintiff's and Class members' Private Information are severe. Identity theft occurs when someone uses another person's financial, and personal information, such as that person's name, address, Social Security number, and other information, without permission in order to commit fraud or other crimes.

70.     According to data security experts, one out of every four data breach notification recipients become a victim of identity fraud.

71.     Furthermore, PII has a long shelf-life because it contains different forms of personal information, it can be used in more ways than one, and it typically takes time for an information breach to be detected.

72.     Accordingly, Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiff and the Class at an imminent, immediate, and continuing increased risk of identity theft and identity fraud. According to a recent study published in the scholarly journal *Preventive Medicine Reports*, public and corporate data breaches correlate to an increased risk of identity

---

[23] Paige Schaffer, *Data Breaches' Impact on Consumers*, Insurance Thought Leadership (July 29, 2021), available at https://www.insurancethoughtleadership.com/cyber/data-breaches-impact-consumers.

[24] *Warning Signs of Identity Theft*, Federal Trade Comm'n, available at https://www.identitytheft.gov/#/Warning-Signs-of-Identity-Theft.

theft for victimized consumers.[25] The same study also found that identity theft is a deeply traumatic event for the victims, with more than a quarter of victims still experiencing sleep problems, anxiety, and irritation even six months after the crime.[26]

73.    There is also a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported. Even data that has not yet been exploited by cybercriminals presents a concrete risk that the cybercriminals who now possess Class members' Private Information will do so at a later date or re-sell it.

74.    Data breaches have also proven to be costly for affected organizations as well, with the average cost to resolve being $4.45 million dollars in 2023.[27] The average cost to resolve a data breach involving health information, however, is more than double this figure at $10.92 million.[28]

75.    The theft of medical information, beyond the theft of more traditional forms off PII, is especially harmful for victims. Medical identity theft, the misuse of stolen medical records and information, has seen a seven-fold increase over the last five years and this explosive growth far outstrips the increase in incidence of

---

[25] David Burnes, Marguerite DeLiema, Lynn Langton, *Risk and protective factors of identity theft victimization in the United States*, Preventive Medicine Reports, Volume 17 (January 23, 2020), available at https://www.sciencedirect.com/science/article/pii/S2211335520300188?via%3Dihub.

[26] *Id.*

[27] *Cost of a Data Breach Report 2023*, IBM Security, available at https://www.ibm.com/reports/data-breach?utm_content=SRCWW&p1=Search&p4=43700072379268622&p5=p&gclid=CjwKCAjwxOymBhAFEiwAnodBLGiGtWfjX0vRlNbx6p9BpWaOo9eZY1i6AMAc6t9S8IKsxdnbBVeUbxoCtk8QAvD_BwE&gclsrc=aw.ds.

[28] *Id.*

traditional identity theft.[29] Medical Identity Theft is especially nasty for victims because of the lack of laws that limit a victim's liabilities and damages from this type of identity theft (e.g., a victim's liability for fraudulent credit card charges is capped at $50), the unalterable nature of medical information, the sheer costs involved in resolving the fallout from a medical identity theft (victims spend, on average, $13,500 to resolve problems arising from this crime), and the risk of criminal prosecution under anti-drug laws.[30]

76.    In response to the Data Breach, Defendant offered to provide certain individuals whose Private Information was exposed in the Data Breach with two years of credit monitoring. However, this is inadequate to protect victims of the Data Breach from the lifelong risk of harm imposed on them by Defendant's failures.

77.    Moreover, the credit monitoring offered by Defendant is fundamentally inadequate to protect them from the injuries resulting from the unauthorized access and exfiltration of their sensitive Private Information.

78.    Here, due to the Breach, Plaintiff and Class members have been exposed to injuries that include, but are not limited to:

       a.    Theft of Private Information;

       b.    Costs associated with the detection and prevention of identity theft and unauthorized use of financial accounts as a direct and proximate result of the Private Information stolen during the Data Breach;

       c.    Damages arising from the inability to use accounts that may have been compromised during the Data Breach;

       d.    Costs associated with time spent to address and mitigate the actual and future consequences of the Data Breach, such as

---

[29]    Medical Identity Theft, AARP (March 25, 2022), available at: https://www.aarp.org/money/scams-fraud/info-2019/medical-identity-theft.html.
[30] *Id.*

finding fraudulent charges, cancelling and reissuing payment cards, purchasing credit monitoring and identity theft protection services, placing freezes and alerts on their credit reports, contacting their financial institutions to notify them that their personal information was exposed and to dispute fraudulent charges, imposition of withdrawal and purchase limits on compromised accounts, including but not limited to lost productivity and opportunities, time taken from the enjoyment of one's life, and the inconvenience, nuisance, and annoyance of dealing with all issues resulting from the Data Breach, if they were fortunate enough to learn of the Data Breach despite Defendant's delay in disseminating notice in accordance with state law;

e.    The imminent and impending injury resulting from potential fraud and identity theft posed because their Private Information is exposed for theft and sale on the dark web; and

f.    The loss of Plaintiff's and Class members' privacy.

79.    Plaintiff and Class members have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their Private Information being accessed by cybercriminals, risks that will not abate within the limited time of credit monitoring offered by Defendant.

80.    As a direct and proximate result of Defendant's acts and omissions in failing to protect and secure Private Information, Plaintiff and Class members have been placed at a substantial risk of harm in the form of identity theft, and they have incurred and will incur actual damages in an attempt to prevent identity theft.

81.    Plaintiff retains an interest in ensuring there are no future breaches, in addition to seeking a remedy for the harms suffered as a result of the Data Breach

on behalf of both himself and similarly situated individuals whose Private Information was accessed in the Data Breach.

**G.     EXPERIENCES SPECIFIC TO PLAINTIFF**

82.     Plaintiff William Mahaffey is an employee at the ABC Unified School District, which contracts with Keenan and to provide ABC Unified School District's employees, including Plaintiff Mahaffey, with benefits including health insurance.

83.     Plaintiff Mahaffey received Keenan's Data Breach notice. The notice informed Plaintiff Mahaffey that his Private Information was improperly accessed and obtained by third parties, including but not limited to Plaintiff's name, date of birth, Social Security number, passport number, driver's license number, health insurance information, and general health information.

84.     After the breach, Plaintiff Mahaffey has noticed a dramatic increase in spam phone calls, text messages, and marketing emails. Plaintiff Mahaffey has experienced major fraud since the Data Breach, including at least four instances of unauthorized access to his financial accounts. Due to the fraud and unauthorized access to his accounts, Plaintiff Mahaffey has been forced to cancel and obtain new payment cards multiple times.

85.     As a result of the Data Breach, Plaintiff Mahaffey has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff Mahaffey has also spent several hours dealing with the Data Breach, valuable time he otherwise would have spent on other activities, including, but not limited to, work and recreation.

86.     As a result of the Data Breach, Plaintiff Mahaffey has suffered anxiety due to the public dissemination of his personal information, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using his Private Information for purposes

of identity theft and fraud. Plaintiff Mahaffey is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

87. Plaintiff Mahaffey suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his Private Information, a form of property that Defendant obtained from her; (b) violation of his privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

88. As a result of the Data Breach, Plaintiff Mahaffey anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And, as a result of the Data Breach, he is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## V.   CLASS REPRESENTATION ALLEGATIONS

89. Plaintiff brings this action on behalf of himself and, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), a Class of:

> All persons in the United States whose Private Information was accessed in the Data Breach.

Excluded from the Class are Defendant, its executives and officers, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change or expand the Class definition after conducting discovery.

90. In the alternative, Plaintiff brings this action on behalf of himself and, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), a subclass of:

> All persons who are residents of the State of California whose Private Information was accessed in the Data Breach (the California Subclass").

Excluded from the Subclass are Defendant, its executives and officers, and the Judge(s) assigned to this case.

91.  <u>Numerosity</u>: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. The exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process. On information and belief, the number of affected individuals estimated to be 1,509,616.[31] The members of the Class will be identifiable through information and records in Defendant's possession, custody, and control.

92.  <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

A.  When Defendant learned of the Data Breach;

B.  Whether hackers obtained Class members' Private Information via the Data Breach;

C.  Whether Defendant's response to the Data Breach was adequate;

D.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

E.  Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

F.  Whether Defendant owed a duty to safeguard their Private Information;

---

[31]  *See*  https://apps.web.maine.gov/online/aeviewer/ME/40/21846091-dc71-4ecc-9db8-a3be3e84a7d0.shtml (last accessed Feb. 6, 2024).

G.  Whether Defendant breached its duty to safeguard Private Information;

H.  Whether Defendant had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class members;

I.  Whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class members;

J.  Whether Defendant's conduct violated the FTCA, HIPAA, and/or the Consumer Protection Act invoked herein;

K.  Whether Defendant's conduct was negligent;

L.  Whether Defendant's conduct was *per se* negligent;

M.  Whether Defendant was unjustly enriched;

N.  What damages Plaintiff and Class members suffered as a result of Defendant's misconduct;

O.  Whether Plaintiff and Class members are entitled to actual and/or statutory damages; and

P.  Whether Plaintiff and Class members are entitled to additional credit or identity monitoring and monetary relief.

93.  <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class as Plaintiff and all members of the Class had their Private Information compromised in the Data Breach. Plaintiff's claims and damages are also typical of the Class because they resulted from Defendant's uniform wrongful conduct. Likewise, the relief to which Plaintiff is entitled to is typical of the Class because Defendant has acted, and refused to act, on grounds generally applicable to the Class.

94.  <u>Adequacy</u>: Plaintiff is an adequate class representative because his interests do not materially or irreconcilably conflict with the interests of the Class they seek to represent, they have retained counsel competent and highly experienced

in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of the Class. Neither Plaintiff nor his counsel have any interests that are antagonistic to the interests of other members of the Class.

95. <u>Superiority</u>: Compared to all other available means of fair and efficient adjudication of the claims of Plaintiff and the Class, a class action is superior. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, *inter alia*, Defendant's records and databases.

## VI. <u>CAUSES OF ACTION</u>
### <u>COUNT I</u>
### <u>NEGLIGENCE</u>
**(By Plaintiff on behalf of the Class)**

96. Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

97. Defendant owes a duty of care to protect the Private Information belonging to Plaintiff and Class members. Defendant also owes several specific duties including, but not limited to, the duty:

a.     to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

b.     to protect individuals' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

c.     to have procedures in place to detect the loss or unauthorized dissemination of Private Information in its possession;

d.     to employ reasonable security measures and otherwise protect the Private Information of Plaintiff and Class members pursuant to the FTCA;

e.     to implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f.     to promptly notify Plaintiff and Class members of the Data Breach, and to precisely disclose the type(s) of information compromised.

98.     Defendant owes this duty because it had a special relationship with Plaintiff and Class members. Plaintiff and Class members entrusted their Private Information to Defendant on the understanding that adequate security precautions would be taken to protect this information. Furthermore, only Defendant had the ability to protect its systems and the Private Information stored on them from attack.

99.     Defendant also owes this duty because industry standards mandate that Defendant protect its clients' current and former benefit plan members' confidential Private Information.

100.     Defendant also owes a duty to timely disclose any unauthorized access and/or theft of the Private Information belonging to Plaintiff and Class members. This duty exists to provide Plaintiff and Class members with the opportunity to

undertake appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their Private Information.

101. Defendant breached its duties owed to Plaintiff and Class members by failing to take reasonable appropriate measures to secure, protect, and/or otherwise safeguard their Private Information.

102. Defendant also breached the duties it owed to Plaintiff and Class members by failing to timely and accurately disclose to them that their Private Information had been improperly acquired and/or accessed.

103. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members were damaged. These damages include, and are not limited to:

- Lost or diminished value of their Private Information;
- Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;
- Lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges; and
- Permanent increased risk of identity theft.

104. Plaintiff and Class members were foreseeable victims of any inadequate security practices on the part of Defendant and the damages they suffered were the foreseeable result of the aforementioned inadequate security practices.

105. In failing to provide prompt and adequate individual notice of the Data Breach, Defendant also acted with reckless disregard for the rights of Plaintiff and Class members.

106. Plaintiff is entitled to damages in an amount to be proven at trial and injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and

provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class members.

## COUNT II
## NEGLIGENCE *PER SE*
### (By Plaintiff on behalf of the Class)

107.   Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

108.   Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, imposes a duty on Defendant to provide fair and adequate data security to secure, protect, and/or otherwise safeguard the Private Information of Plaintiff and Class members.

109.   HIPAA imposes a duty on Defendant to implement reasonable safeguards to protect Plaintiff's and Class members' Private Information. 42 U.S.C. § 1302(d), *et seq*.

110.   HIPAA also requires Defendant to render unusable, unreadable, or indecipherable all Private Information it collected. Defendant was required to do so through "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without the use of a confidential process or key." *See* definition of "encryption" at 45 C.F.R. § 164.304.

111.   In the event of a data breach, HIPAA obligates Covered Entities and Business Associates to notify affected individuals, prominent media outlets, and the Secretary of the Department of Health and Human Services of the data breach without unreasonable delay and in no event later than 60 days after discovery of the data breach. 45 CFR § 164.400, *et seq.*

112.   Defendant violated the FTCA and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to secure, protect, and/or otherwise safeguard Plaintiff's and Class members' Private Information.

113.   Defendant violated HIPAA by failing to properly encrypt the Private Information it collected.

114.   Defendant violated HIPAA by unduly delaying reasonable notice of the actual breach; in this case by more than five months.

115.   Defendant's failure to comply with HIPAA and the FTCA constitutes negligence *per se*.

116.   Plaintiff and Class members are within the class of persons that the FTCA and HIPAA are intended to protect.

117.   It was reasonably foreseeable that the failure to protect and secure Plaintiff's and Class members' Private Information in compliance with applicable laws and industry standards would result in that Information being accessed and stolen by unauthorized actors.

118.   As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information, including but not limited to theft of their personal information, damages from the lost time and effort to mitigate the impact of the Data Breach, and permanently increased risk of identity theft.

119.   Plaintiff and Class members are entitled to damages in an amount to be proven at trial and injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class members.

**COUNT III**
**INVASION OF PRIVACY**
**(By Plaintiff on behalf of the Class)**

120.   Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

121.    Plaintiff and Class members had a reasonable expectation of privacy in the Private Information that Defendant possessed and/or continues to possess.

122.    By failing to keep Plaintiff's and Class members' Private Information safe, and by misusing and/or disclosing their Private Information to unauthorized parties for unauthorized use, Defendant invaded Plaintiff's and Class members' privacy by:

a.    Intruding into their private affairs in a manner that would be highly offensive to a reasonable person; and

b.    Publicizing private facts about Plaintiff and Class members, which is highly offensive to a reasonable person.

123.    Defendant knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's position would consider Defendant's actions highly offensive.

124.    Defendant invaded Plaintiff's and Class members' right to privacy and intruded into Plaintiff's and Class members' private affairs by misusing and/or disclosing their private information without their informed, voluntary, affirmative, and clear consent.

125.    As a proximate result of such misuse and disclosures, Plaintiff's and Class members' reasonable expectation of privacy in their Private Information was unduly frustrated and thwarted. Defendant's conduct amounted to a serious invasion of Plaintiff's and Class members' protected privacy interests.

126.    In failing to protect Plaintiff's and Class members' Private Information, and in misusing and/or disclosing their Private Information, Defendant has acted with malice and oppression and in conscious disregard of Plaintiff's and Class members' rights to have such information kept confidential and private, in failing to provide adequate notice, and in placing its own economic, corporate, and legal interests above the privacy interests of its millions of clients' current and former

benefit plan members. Plaintiff, therefore, seeks an award of damages, including punitive damages, on behalf of himself and the Class.

## COUNT IV
## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (By Plaintiff on behalf of the Class)

127.  Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

128.  The California Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code §17200, *et seq.*, prohibits, *inter alia*, "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

129.  Defendant engaged in unlawful, unfair, and fraudulent business acts or practices in violation of the UCL.

130.  Defendant's acts, omissions, and conduct were "unlawful" because they violated the FTC Act, HIPAA, and California data privacy laws.

131.  Defendant's acts, omissions, and conduct were also "unlawful" because they violated the California Customer Records Act ("CCRA"), Cal. Civ. Code § 1798.80, *et seq.* Defendant failed to take reasonable measures to protect Plaintiff's and Class members' Private Information, in violation of Cal. Civ. Code § 1798.81.5. Defendant also failed to timely and fully disclose the extent of the Data Breach in the Notice sent to Plaintiff and Class members, in violation of Cal. Civ. Code § 1798.82.

132.  Defendant's acts, omissions, and conduct were also "unlawful" because they violated the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150(a), and the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code §56.10(a), by failing to implement proper procedures and filing to safeguard Plaintiff's and Class members' Private Information.

133.  Defendant's acts, omissions, and conduct were "unfair" because they offend public policy and constitute immoral, unethical, and unscrupulous activities

that caused substantial injury, including to Plaintiff and Class members. The gravity of harm resulting from Defendant's conduct outweighs any potential benefits attributable to the conduct and there were reasonably available alternatives to further Defendant's legitimate business interests. Defendant's unfair acts and practices include, but are not limited to:

    a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class members' Private Information, which was a direct and proximate cause of the Data Breach;

    b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents in the industry, which were direct and proximate causes of the Data Breach;

    c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class members' Private Information, including but not limited to duties imposed by HIPAA, the CCRA, the CCPA, the CMIA, and the FTC Act, which were direct and proximate causes of the Data Breach;

    d. Misrepresenting that they would protect the privacy and confidentiality of Plaintiff's and Class members' Private Information, including by implementing and maintaining reasonable security measures;

    e. Misrepresenting that they would comply with common law, statutory, and self-imposed duties pertaining to the security and privacy of Plaintiff's and the Class members' Private Information;

f.  Omitting, suppressing, and concealing the material fact that they did not reasonably or adequately secure Plaintiff's and Class members' Private Information;

g.  Omitting, suppressing, and concealing the material fact that they did not comply with common law, statutory, and self-imposed duties pertaining to the security and privacy of Plaintiff's and Class members' Private Information; and

h.  Failing to promptly and adequately notify Plaintiff and Class members that their Private Information was accessed by unauthorized persons in the Data Breach.

134.   Defendant engaged in fraudulent business practices by making material misrepresentations and by failing to disclose material information regarding Defendant's deficient security policies and practices, the security of the Private Information of Plaintiff and Class members, and the Data Breach.

135.   Defendant had exclusive knowledge of material information regarding its deficient security policies and practices, and regarding the security of the Private Information of Plaintiff and Class members. This exclusive knowledge includes, but is not limited to, information that Defendant received through internal and other non-public audits and that the Private Information of Plaintiff and Class members was vulnerable.

136.   Defendant also had exclusive knowledge about the extent of the Data Breach, including during the days, weeks, and months following the Data Breach.

137.   Defendant also had exclusive knowledge about the length of time that it maintained individuals' Private Information.

138.   Defendant failed to disclose the material information it had regarding its deficient security policies and practices, and regarding the security of the Private Information of Plaintiff and Class members. For example, even though Defendant has long known that its security policies and practices were substandard and

deficient, and that the Private Information of Plaintiff and Class members was vulnerable as a result, Defendant failed to disclose this information to Plaintiff and Class members. Likewise, during the days and weeks following the Data Breach, Defendant failed to disclose information that it had regarding the extent and nature of the Data Breach.

139.    Defendant had a duty to disclose the material information that it had because, *inter alia*, it had exclusive knowledge of the information, it actively concealed the information, and because Defendant was in a fiduciary position by virtue of the fact that Defendant collected and maintained Plaintiff's and Class members' financial information, medical information, and other Private Information.

140.    Defendant's representations and omissions were material because they were likely to deceive reasonable individuals about the adequacy of Defendant's data security and its ability to protect the confidentiality of current and former employees' PII.

141.    Had Defendant disclosed to Plaintiff and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business. Instead, Defendant received, maintained, and compiled Plaintiff's and Class members' PII without advising them that Defendant's data security practices were insufficient to maintain the safety and confidentiality of their PII. Accordingly, Plaintiff and the Class members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

142.    Defendant's practices were also contrary to legislatively declared and public policies that seek to protect data and ensure that entities who solicit or are entrusted with personal data utilize appropriate security measures, as reflected in laws like CCRA, CCPA, and FTC Act.

143.  The injuries suffered by Plaintiff and Class members greatly outweigh any potential countervailing benefit to consumers or to competition, and are not injuries that Plaintiff and Class members should have reasonably avoided.

144.  The damages, ascertainable losses and injuries, including to their money or property, suffered by Plaintiff and Class members as a direct result of Defendant's unlawful, unfair, and fraudulent acts and practices as set forth in this Complaint include, without limitation:

  a.  unauthorized charges on their debit and credit card accounts;

  b.  theft of their PII;

  c.  costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

  d.  loss of use of and access to their account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including adverse effects on their credit scores and adverse credit notations;

  e.  costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate and mitigate the actual and future consequences of the Data Breach, including without limitation finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance and annoyance of dealing with all issues resulting from the Data Breach;

  f.  the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

g. damages to and diminution in value of their personal information entrusted to Defendant, and with the understanding that Defendant would safeguard their data against theft and not allow access and misuse of their data by others; and

h. the continued risk to their PII, which remains in the possession of Defendant and which is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect data in their possession.

145. Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages; declaratory and injunctive relief, including an injunction barring Defendant from disclosing their PII without their consent; reasonable attorneys' fees and costs; and any other relief that is just and proper.

## COUNT V
## VIOLATION OF THE CALIFORNIA CUSTOMER RECORDS ACT
### (By Plaintiff on behalf of the Class)

146. Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

147. Cal. Civ. Code § 1798.81.5 of the California Customer Records Act ("CCRA") provides that "to ensure that personal information about California residents is protected," businesses maintaining the personal information of California residents "shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

148. Defendant failed to take reasonable measures to protect Plaintiff's and Class members' PII, in violation of Cal. Civ. Code § 1798.81.5.

149. Further, the CCRA requires that "[a] person or business that maintains computerized data that includes personal information that the person or business

does not own shall notify the owner or licensee of the information of the breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82(b).

150.    Defendant did not immediately notify Plaintiff and the Class of the Data Breach upon its discovery, and instead waited more than five months to provide notice.

151.    Defendant also failed to timely and fully disclose the extent of the Data Breach in the Notice sent to Plaintiff and Class members, in violation of Cal. Civ. Code § 1798.82.

152.    Defendant's violations of Cal. Civ. Code §§ 1798.81.5 and 1798.82 are a direct and proximate result of the Data Breach.

153.    Plaintiff and the Class members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages; declaratory and injunctive relief, including an injunction barring Defendant from disclosing their PII without their consent; reasonable attorneys' fees and costs; and any other relief that is just and proper.

## COUNT VI
## VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT
### (By Plaintiff on behalf of the Class)

154.    Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

155.    Cal. Civ. Code § 1798.150(a) of the California Consumer Privacy Act ("CCPA") provides that "[a]ny consumer whose nonencrypted and nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5 . . . is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature

of the information to protect the personal information may institute a civil action" for statutory damages, actual damages, injunctive relief, declaratory relief and any other relief the court deems proper.

156.   Plaintiff is a "consumer" as defined by Cal. Civ. Code § 1798.140(i) because he is natural person who resides in California.

157.   Defendant is a "business" as defined by Cal. Civ. Code § 1798.140(d) because Defendant is a corporation organized for the profit or financial benefit of its shareholders or owners and have gross annual revenues in excess of seven-hundred million dollars.

158.   Defendant failed to take sufficient and reasonable measures to safeguard its data security systems and protect Plaintiff's and Class members' highly sensitive personal information and medical data from unauthorized access. Defendant's failure to maintain adequate data protections subjected Plaintiff's and the Class's nonencrypted and nonredacted sensitive personal information to exfiltration and disclosure by malevolent actors.

159.   Defendant's violations of Cal. Civ. Code § 1798.150(a) are a direct and proximate result of the Data Breach.

160.   Plaintiff and the Class members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages; declaratory and injunctive relief, including an injunction barring Defendant from disclosing their PII without their consent; reasonable attorneys' fees and costs; and any other relief that is just and proper.

### COUNT VII
### VIOLATION OF THE CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT
### (By Plaintiff on behalf of the Class)

161.   Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

162.   Cal. Civ. Code § 56.10(a) of the California Confidentiality of Medical Information Act ("CMIA") provides that "[a] provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization[.]"

163.   The CMIA further requires that "[e]very provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein. Any provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided under subdivisions (b) and (c) of Section 56.36." Cal. Civ. Code §56.101(a).

164.   Defendant is a "contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information," because they have numerous clients on whose behalf Keenan administers employee benefits, including health insurance, and therefore is "organized for the purpose of maintaining medical information in order to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care." Cal. Civ. Code  §§ 56.06(a), 56.101(a).

165.   Plaintiff is an "enrollee" or "subscriber" because he is a "person who is enrolled in a plan and who is a recipient of services from the plan," and "the person who is responsible for payment to a plan or whose employment or other status, except for family dependency, is the basis for eligibility for membership in that plan." Cal. Civ. Code § 56.05(e), (t); Cal. Health & Safety Code § 1345(c), (p).

166.   Defendant failed to safeguard the protected medical information of Plaintiff and the Class by maintaining inadequate data security networks, allowing

unauthorized parties to access the protected medical information of Plaintiff and the Class, and failing to preserve the confidentiality of the protected medical information of Plaintiff and the Class.

167.   Defendant allowed third parties to access, exfiltrate, and disclose Plaintiff's and Class members' protected health and personal information without their consent or knowledge. Defendant negligently represented that such information would be protected from such unauthorized access.

168.   Defendant's violations of Cal. Civ. Code §§ 56.10(a) and 56.101(a) are a direct and proximate result of the Data Breach.

169.   Plaintiff and the Class members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages; declaratory and injunctive relief, including an injunction barring Defendant from disclosing their PII without their consent; reasonable attorneys' fees and costs; and any other relief that is just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually, and on behalf of all members of the Class, respectfully requests that the Court enter judgment in his favor and against Defendant, as follows:

A.   That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representative; and appoint Plaintiff's Counsel as Class Counsel;

B.   That Plaintiff be granted the declaratory relief sought herein;

C.   That the Court grant permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein;

D.   That the Court award Plaintiff and Class members compensatory, consequential, and general damages in an amount to be determined at trial;

E.   That the Court award Plaintiff and Class members statutory damages, and punitive or exemplary damages, to the extent permitted by law;

F.   That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

G.   That the Court award pre- and post-judgment interest at the maximum legal rate;

H.   That the Court award grant all such equitable relief as it deems proper and just, including, but not limited to, disgorgement and restitution; and

I.   That the Court grant all other relief as it deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and the putative Class, demands a trial by jury on all issues so triable.

Date: February 15, 2024                    Respectfully Submitted,

                    **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

            By,   /s/ *Rachele R. Byrd*
                  RACHELE R. BYRD (190634)
                  *byrd@whafh.com*
                  750 B Street, Suite 1820
                  San Diego, CA 92101
                  Telephone: 619-239-4599
                  Facsimile: 619-234-4599

                  Daniel O. Herrera*
                  Nickolas J. Hagman*
                  Mohammed A. Rathur*
                  **CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**

135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
dherrera@caffertyclobes.com
nhagman@caffertyclobes.com
mrathur@caffertyclobes.com

\* *Pro Hac Vice Application* forthcoming

*Attorneys for Plaintiff and the Proposed Class*